UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEVE PRUITT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CAUSE NO. 3:12-CV-603 WL |
| | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Respondent. | ) |

OPINION AND ORDER

Steve Pruitt, a *pro se* prisoner, filed an amended habeas petition challenging a prison disciplinary proceeding. (DE 3.) On July 16, 2012, Mr. Pruitt was found guilty of disorderly conduct under cause number RDC 12-07-0011. The charge was initiated on July 13, 2012, when Corrections Officer A. Stobaugh prepared a conduct report stating as follows:

> On 7/13/12 at approximately 8:00 p.m., I, Officer Stobaugh, called for Offender Pruitt, Steven DOC #170795 to exit the 1st Range dayroom and return to his cell, due to his unruly conduct. Offender Pruitt sarcastically responded, "Yes Sir, Yankee Doodle!" I then advised the Offender that his actions and comments would result in a conduct report. The Offender yelled, "I'm not going to listen to you, and you can't fucking make me." Offender Pruitt came very close to my person and continued to yell in a disorderly manner. Several offenders returning from med pass became aware of the situation. At that time my line supervisor intervened and ordered Offender Pruitt back to his cell twice, at which point he complied.

(DE 15-1.) On the same date, Sergeant Hanley (first name unknown) prepared the following witness statement:

> I Sgt. Hanley had just opened the Sergeants' Office when I heard a disturbance behind me. I turned around to see Offender Pruitt extremely close to Officer Stobaugh. I Sgt. Hanley came out of the office and asked what was going on and told Offender Pruitt to back up away from the officer. Offender Pruitt continued to yell that he was not going to listen to what this "fucking officer had to say." I Sgt. Hanley calmly told him he needed to go back to his cell, Offender Pruitt then asked "for what." I Sgt. Hanley repeated myself saying "you need to go to your cell now." Offender Pruitt complied at this time.

(DE 15-4 at 2.) Officer Trueblood (first name unknown) also prepared the following witness statement:

> I Ofc. Trueblood while 1st range OIC observed Offender Pruitt #170797 D1-6B during med movement in the lobby area walking controversially close to Officer Stobaugh's person. Offender Pruitt was verbally yelling instructions to Ofc. Stobaugh, stating "I don't fucking have to do what you say." Officer Stobaugh ordered the offender back to his cell several times. Sgt. Hanley ordered the offender back to his cell, but Offender Pruitt verbally stayed argumentative while in route.

(DE 15-4 at 3.)

On July 16, 2012, Mr. Pruitt was notified of the charge and given a copy of the conduct report. (DE 15-1, 15-2.) He waived the 24-hour notice requirement, pled not guilty, declined the assistance of a lay advocate, and did not request any witnesses. (DE 15-2.) He requested only the following physical evidence: "Medication - Depression." (*Id.*) Later that same day, a disciplinary hearing was held. (DE 15-4.) Mr. Pruitt made the following statement: "I was cooperating until the Officer grabbed a hold of me. I was 4 hours late taking my medication." (*Id.*) The hearing officer also considered one of Mr. Pruitt's medical records indicating that he had a history of mental health problems and was currently on medication for depression. (DE 15-4 at 4-6.) The hearing officer nevertheless found him guilty, and among other sanctions revoked 90 days of earned time credits. (*Id.* at 1.) Mr. Pruitt appealed to the facility head and final reviewing authority, but his appeals were denied. (DE 15-5, DE 15-6.) Thereafter, he filed the present petition.

When prisoners lose earned time credits in prison disciplinary hearings, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and

the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). To satisfy due process, there must also be "some evidence" in the record to support the hearing officer's determination. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Pruitt first claims that he was denied 24 hours advance written notice of the charge. (DE 3 at 4.) However, as the respondent points out, Mr. Pruitt signed a form clearly waiving his right to 24 hours notice at the time of screening. (*See* DE 15-2.) "It is without question that an individual may waive his or her procedural due process rights." *Domka v. Portage County*, 523 F.3d 776, 781 (7th Cir. 2008). Mr. Pruitt does not respond to the state's waiver argument or otherwise mention this claim in his traverse. (*See* DE 16.) Based on the record, he has not demonstrated an entitlement to habeas relief on this claim.

Next, Mr. Pruitt claims that he was denied his right to present documentary evidence in his defense. (DE 3 at 5.) A prisoner has a limited right to call witnesses and present documentary evidence in his defense, consistent with correctional goals and safety. *Wolff*, 418 U.S. at 566. A hearing officer may deny a witness or evidence request that threatens institutional goals or is irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). Furthermore, the denial of evidence will be considered harmless unless the prisoner shows that the evidence could have aided his defense. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011); *Piggie*, 342 F.3d at 666.

Here, Mr. Pruitt asserts that the hearing officer should have obtained all of his medical records for consideration at the hearing. (DE 3 at 5.) However, he did not make this specific request at the time of screening, and instead simply referenced "medication" for "depression." (DE 15-2.) Mr. Pruitt cannot fault the hearing officer for failing to consider evidence he did not properly

request. *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (if an inmate fails to request exculpatory evidence "either before or at the hearing, then the CAB could not have denied him due process by not considering the request"); *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (observing that due process does not require "the consideration of evidence that could have been but was not presented at the hearing"). Furthermore, the record reflects that the hearing officer did consider Mr. Pruitt's mental health issues, as well as the fact that he was on medication at the time of this incident. (*See* DE 15-4 at 1, 4-6.) Mr. Pruitt has not explained how additional mental health records would have been exculpatory to the charge. Accordingly, he has not established a federal due process violation.

Finally, Mr. Pruitt challenges the sufficiency of the evidence. (DE 3 at 5.) In reviewing a disciplinary determination for sufficiency of the evidence, "courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson*, 188 F.3d at 786. "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added). The court will overturn the hearing officer's decision only if "no reasonable adjudicator could have found [the prisoner] guilty of the offense on the basis of the evidence presented." *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1077 (7th Cir. 1994).

Here, Mr. Pruitt appears to concede that he acted in a disorderly manner, but asserts that there was insufficient evidence he was disruptive or violent.[1] (DE 3 at 5, DE 16.) However, the

---

[1] The Adult Disciplinary Procedures define disorderly conduct as "exhibiting disruptive and violent conduct which disrupts the security of the facility or other are in which the offender is located." (DE 15-7 at 7.)

4

evidence reflects that Mr. Pruitt approached one of the officers in a confrontational manner, yelled and swore at the officer, and disobeyed several orders to return to his cell. His actions necessitated the intervention of additional staff to diffuse the situation, since other inmates were passing through the area at the time. This constitutes some evidence that Mr. Pruitt was guilty of disorderly conduct. *See Hill*, 472 U.S. at 457; *see also Moffat v. Broyles*, 288 F.3d 978, 988 (7th Cir. 2002) (witness statements constituted some evidence); *McPherson*, 188 F.3d at 786 (conduct report provided some evidence to support disciplinary determination).

Mr. Pruitt suggests that he should not be held responsible for his conduct because he suffers from "mood swings, depression, bipolar [disorder], and brain damage," and in his words, "wasn't in the mood for C.O. Stobaugh harassing me." (DE 16 at 2.) Regardless of whether Mr. Pruitt was in a bad mood, "inmates cannot be permitted to decide which orders they will obey, and when they will obey them[.]" *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). As the Seventh Circuit has explained, "When an inmate refuses to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials [which] . . . places the staff and other inmates in danger." *Id.* Thus, his argument is unavailing. Furthermore, the hearing officer considered Mr. Pruitt's statement that Officer Stobaugh provoked the incident and that he was late taking his medication on that date.[2] He nevertheless concluded that Mr. Pruitt was guilty of the offense, and it is not the province of this Court to reweigh the evidence or determine the relative credibility of the witnesses. Based on the record, Mr. Pruitt has not established a violation of his federal due process rights.

For the reasons set forth above, the petition (DE 3) is DENIED.

---

[2] Mr. Pruitt indicates in his traverse that he was on his way back from taking his medication at the time of this incident. (DE 16 at 2.)

SO ORDERED.

ENTERED: July 15, 2013

                                                    s/William C. Lee
                                                 William C. Lee, Judge
                                                 United States District Court